APPEAL OF STEPHEN D. HELLER.
APPEAL OF CHARLES BRODHEAD, ADMR.

APPEALS FROM THE DECREE OF THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY, IN EQUITY.

Argued March 11, 1887—Decided March 28, 1887.

</div>

The three children of an intestate decedent amicably partitioned his lands among themselves and by an agreement in writing, the widow not signing, provided that so long as the widow should make no claim for any dower out of said lands, they would each pay her annually a certain sum, etc., and that "whenever Catharine Shimer shall claim her dower at common law then these payments and privileges shall cease ; but nothing herein contained and no receipt by her of any of the above-mentioned payments shall be any bar to her application for such dower, but such payments shall be claimed as a credit on the amount of dower which may be claimed." The widow received payments and privileges under this agreement and died without having claimed dower. One of the heirs taking a portion of the lands made payments in part for a time and, becoming insolvent, his property was sold to different purchasers at sheriff's sale. After the widow's death, her administrator

Statement of Facts.

filed a bill in equity to recover dower out of a parcel of the real estate which had been thus sold. *Held* :

1. That there was no implication that the widow by the receipt of payments under the agreement waived her right under the law, and that she was entitled to recover all arrears, subject to a credit as stated in the agreement.

2. The declarations made by the widow to the defendant before he had purchased the land, that she wanted nothing and there would be no lawsuit, etc., were insufficient to create an estoppel.

3. The plaintiff in the suit being an administrator, one who is an heir at law of the plaintiff's decedent is not competent as a witness.

4. That as the land was sold at sheriff's sale subject to a mortgage which was prior to all other liens at the time thereof, and no dower in it had then been apportioned, the arrears of dower were not discharged by the sheriff's sale.

5. That the recovery is to be measured by one-third of the annual value of the rents, issues and profits of the tract in which the widow is dowable, and under the circumstances it was not error to refuse interest upon the arrears.

6. That as said insolvent heir took other lands of equal value with that in suit, the defendant was entitled to credit for but one half of the payments made under the agreement by that heir to the widow in her lifetime.

Before ˙ Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Clark, JJ.; Green, J., not sitting.

Nos. 281 and 315 January Term, 1887, Sup. Ct.; court below No. 1 February Term, 1884, C. P. in Equity.

In the court below Charles Brodhead, administrator of Catharine Shimer, deceased, filed a bill in equity against Stephen D. Heller, to recover the dower and arrears of dower due the said decedent out of a tract of land owned by the said defendant, wherein it was claimed the said deceased was dowable from April 30, 1866, to May 9, 1881. The cause was heard by *Mr. Robert I. Jones*, as examiner and master, who found the following facts :

Conrad Shimer died in Hanover township on April 30, 1866, intestate, leaving a widow, Catharine, and three children, Samuel C., Asher D. and Camilla M., who is the wife of Charles Brodhead, the plaintiff in the bill. No letters of administration were taken out, and his estate, real and personal, was amicably divided among his children. In this division Samuel C. Shimer received from Asher D. Shimer and wife

and Charles Brodhead and wife their deed of conveyance for six parcels of land, late of the decedent, one of them a tract of seventy-eight acres and seventy-eight perches in Hanover and Bethlehem townships.

On December 10, 1866, the three children executed an agreement reciting: "Whereas Samuel C. Shimer, Asher D. Shimer and Camilla M. Brodhead, children and heirs at law of Conrad Shimer, deceased, have this day apportioned the real estate of said decedent among themselves; and, whereas Catharine Shimer, widow of said decedent has not made any claim for any dower out of said real estate; now, the parties above named hereby agree with each other that so long as said Catharine shall make no claim for dower they will each of them pay annually to the said Catharine during life as follows: The said Samuel the sum of $200 annually; the said Asher the sum of $100 annually, and the said Camilla the sum of $200 annually, the said amounts to be paid half yearly," etc. In addition to these payments, Asher D. was to furnish the widow with certain specified articles and to permit her to enjoy certain privileges. It was further provided: "Whenever Catharine Shimer shall claim her dower at common law then these payments and privileges shall cease; but nothing herein contained and no receipt by her of any of the above mentioned payments shall be any bar to her application for such dower, but such payments shall be claimed as a credit on the amount of dower which may be claimed." The widow did not sign this agreement.

On April 1, 1870, Samuel C. Shimer executed a mortgage for $6,000 upon the said tract to the Society of the United Brethren for Propagating the Gospel among the Heathen. This loan was obtained upon representations made by the mortgagor that there were no liens on the premises. He also borrowed from Jacob Crossman $5,000, and from Isaac Treible $2,000, in each case representing that there were no incumbrances upon the land. On October 11, 1879, all the real estate of Samuel C. Shimer was sold at sheriff's sale upon a writ from the judgment of Isaac Treible, who became the purchaser of the tract mentioned for $50, subject to the mortgage of the Society of the United Brethren &c., which was a first lien. At this sale the following notice was read:

To all bidders at the Sheriff's sale of the real estate of Samuel C. Shimer:

Take notice that I, Catherine Shimer, widow of Conrad Shimer, deceased, am entitled to and shall claim my statutory dower and thirds of such widow in the lands and tenements late of the said Conrad Shimer, deceased, and now about to be sold as the property of the said Samuel C. Shimer. That I have received no part of the said dower and thirds and claim the same from the time of my late husband's death to the time of payment thereof, and with interest thereon according to law. (Signed)

CATHERINE SHIMER.

On December 4, 1879, Isaac Treible and wife conveyed the said tract to Stephen D. Heller, the defendant in the bill, subject to said mortgage, and with general warranty. But before Mr. Heller bought he called on Mrs. Shimer relative to her claim for dower, and his testimony is the only evidence in the case as to the conversation which then took place. He asked her what her claim was and she said she wanted nothing, that he should go to Samuel, and as he made it she would be satisfied. He said he would like to buy the land, but would not like to have a lawsuit, and that he intended buying the farm Samuel had owned. She said there would be no lawsuit about it, that he should buy the farm and that her husband always said it was a good piece of property. Upon the faith of what Mrs. Shimer said, Mr. Heller bought the land from Treible.

Afterwards, in 1880, Mr. Heller again visited Mrs. Shimer with Isaac S. Knect, who had bought another of the properties, and Jacob Gernet. Knect alone talked with Mrs. Shimer and afterwards came out and told Mr. Heller what she had said, which was in substance that she would claim no dower out of any of the land which had belonged to Samuel. Knect went to inquire as to Mr. Heller's land as well as his own. After this, on April 3, 1880, Mr. Heller paid off the mortgage held by the Society of the United Brethren.

Samuel C. Shimer died insolvent. In his lifetime, he had paid to Mrs. Shimer in all not over two hundred and fifty dollars, at different times and in smaller sums than provided for in the agreement executed. Mrs. Shimer herself died on May

9, 1881, and had never made a demand on Mr. Heller for dower or for interest. Charles Brodhead took out letters of administration upon her estate July 19, 1881, and on December 10, 1883, filed this bill.

The master then proceeded to find that, so far as concerned the question before him, it was not material whether Samuel C. Shimer owned other land than the seventy-eight acres and seventy-eight perches or not, because the bill sought only to have the statutory dower set apart so far as the Heller tract was concerned. The widow was no party to the agreement between the children, and under the law she had an estate in the land which could not be divested except by a conveyance or by such conduct on her part as would amount to an equitable estoppel; and under the authority of Merrill's Appeal, 16 W. N. 491, her administrator might maintain a bill for her dower. As to the alleged estoppel by her acts and declarations, Heller had bought of Treible before he called upon her about her claim. Her statements to Knect were also after Heller had bought from Treible. Estoppel arises when an injury has been caused or at least attempted : Taggart's App., 99 Penn. St. 631; Ayres v. Wattson, 57 Idem 363, and here both Heller and Knect had already acted, and although Heller paid off the mortgage afterward, he had already been bound to do this as he had bought subject to it, and therefore there was no estoppel.

The answer admitted that the tract was sold at sheriff's sale on October 11, 1879, subject to the mortgage of $6,000, and that at the time of the sale the notice heretofore quoted was read; yet it was claimed that it was the duty of the widow to demand her dower out of the proceeds of the sheriff's sale. But, at the time of the sheriff's sale, no dower had been apportioned and no arrearages fixed ; and besides, the mortgage was then a subsisting first-fixed lien, and the land was sold subject to it, which preserved the dower : Dickinson v. Beyer, 87 Penn. St. 274; Devine's App., 30 Idem 348; Schall's App., 40 Idem 170. However, it was not material whether Treible and Heller had notice or not. It is no defence to an action of dower that the defendant was a *bona fide* purchaser without notice : 2 Scrib. Dow. 29, 168; 1 Story Eq. J., §§ 630, 631.

Nor was it of importance that, if plaintiff should recover,

distribution would be made to Samuel C. Shimer of a share of his own debt; that is, his share of the arrearages he owed to his mother; for a decree in favor of the plaintiff would not prevent any proper defence to the distribution hereafter.

This was a proceeding by a plaintiff administrator. Stephen D. Heller was incompetent, and so were Charles Brodhead and Camilla, his wife, Samuel C. Shimer, Asher D. Shimer and his wife: Tintsman v. Croushore, 104 Penn. St. 193. The declarations, made by Samuel C. Shimer to parties from whom he borrowed money, were clearly inadmissible to affect the question in this controversy.

A number of farmers were examined as to the value of the farm per acre, and as to the amount in value of the improve-. ments put upon it by Heller. From the testimony as to the value of the yearly products, and the custom in the township to rent on shares, it was found that the landlord's yearly share of the rents, issues and profits would amount to $400 as the average yield, giving to the widow $133.33 each year. There was no evidence taken as to the yearly value of the other properties that Samuel C. Shimer took under his deed, and there was nothing to enable the master to divide the money paid by him as dower among the six pieces of property. The master therefore allowed the arrearages at the above rate from the death of Conrad Shimer, giving credit for the entire $250 paid in money by Samuel, as though paid on account of the arrearages due upon the Heller land.

The widow made no demand upon Heller for the payment of her dower. She lived, after the sheriff's sale on October 11, 1879, until May 9, 1881, without instituting suit, and there seems to be no authority for the allowance of interest: Scrib. Dow., 2d ed., 738*; Paul's Exrs. v. Paul, 36 Penn. St. 270.

Thereupon the master recommended a decree that the defendant pay to the plaintiff the sum of $1,749.95 (being $133.33 annually from April 30, 1866, to May 9, 1881, fifteen years, less $250 paid his mother by Samuel C. Shimer), as the one third of the rents, issues and profits of the tract of seventy-eight acres and seventy-eight perches, wherein the said Mrs. Catharine Shimer was dowable, with costs. To this report, exceptions were filed by Stephen D. Heller, the defendant, that the master erred:

1. In holding " so far as concerns the question before the master it is not material whether Samuel owned other land than the seventy-eight acres and seventy-eight perches or not, because the bill only seeks to have the statutory dower set apart so far as the Heller tract is concerned." [1]

2. In holding " The widow was no party to the agreement between the children." He should have found that she accepted under the agreement and had her living under it, until Samuel was sold out by the sheriff. [2]

3. In holding that Catharine Shimer was not estopped by reason of her declaration made to Knect on the ground that " both Heller and Knect had already acted, and although Heller paid for the mortgage afterwards he had already agreed to do this because he bought subject to it." He should have held that Heller was not bound to pay the mortgage, and would have declined to pay it, had he not relied on Mrs. Shimer's statement, communicated to him by Knect, that she would claim no dower in any of the lands that had belonged to Samuel. [3]

4. In holding " in the present case the $6,000 mortgage was prior to all other liens at the time of the sheriff's sale, and the land was sold subject to it. This preserved the dower under the authorities in Pennsylvania." He should have held that the arrearages of the dower were discharged by the sheriff's sale and the widow should have ruled the money into court and taken her distribution. [4]

5. In holding that it was of no importance that in case the plaintiff recovered, distribution would be made to Samuel C. Shimer of his share in his own debt. [5]

6. In holding that " the declarations of Samuel C. Shimer to parties from whom he borrowed money are clearly inadmissible, to affect the question arising in this controversy." He should have held that Samuel's mother had always referred all inquirers about dower to Samuel, that she had record notice that Samuel had encumbered the farm with a $6,000 mortgage, and was bound by all that Samuel said about the dower. [6]

7. In finding that the rents, issues and profits of the Heller farm amounted to $400 per year, giving the widow $133.33 each year. If there were any dower chargeable it would be a proportionate share of $200 per annum for the six tracts, and

then it would begin to run only from the time that Heller bought the land and had the yearly income, or from the time that Mrs. Shimer abandoned her claim under the agreement and made her claim against the land. [7]

8. In not dismissing the bill at the costs of the plaintiff. [8]

9. In not finding that Samuel C. Shimer's children are in equity estopped from recovering in this suit, moneys which their father was bound to pay. [9]

10. In deciding that Samuel C. Shimer was not a competent witness on the call of the defendant. [10]

Exceptions were filed by Charles Brodhead, the plaintiff, that the master erred :

1. In finding as a fact that one third of the rents, issues and profits annually of the said tract of land of seventy-eight acres and seventy-eight perches amounts to the sum of $133.33, whereas the weight of the testimony is that the said tract of land is worth upwards of $12,000, and the widow's annual interest based on this valuation is nearly $240. [1]

2. In not allowing interest on the sum found due the plaintiff from the time of the death of Catharine Shimer. [2]

3. In deducting from the amount found to be due the plaintiff the sum of $250, the entire amount paid by Samuel C. Shimer on account of the dower in his real estate, because the said sum was paid on account of the dower in all of the six tracts of land received by the said Samuel, whereas the dower now to be recovered is the widow's interest in only one of the said tracts. [3]

The exceptions were all overruled by the master and upon their renewal, they were dismissed by the court, W. W. SCHUYLER, P. J., and the report confirmed, without opinion. Thereupon the defendant appealed to this court, assigning for error :

1–10. The dismissal of his several exceptions, [1–10]

The plaintiff also appealed, assigning for error :

1–3. The dismissal of his several exceptions, [1–3]

*Mr. W. E. Doster*, for the appellant, Stephen D. Heller :

1. Our first and seventh assignments criticise the master's method of ascertaining the amount of dower the defendant was to pay. Our position is that if the widow be entitled to

any dower in her husband's lands, it was in all the lands of which he died seized; that her share in those lands was either one third of the whole laid out in acres by metes and bounds, or else one third of the rents, issues and profits of the whole, measured by the yield at the time of his death; and that in order to ascertain the amount due from any given number of acres, it was necessary first to have the sum total of the dower by appraisement of the whole or a sale, and then ascertain what proportion the given number of acres bore.to the whole; in other words, to assess the whole one third proportionately on the respective purparts: Gourley v. Kinley, 66 Penn. St. 271.

2. The facts established by the testimony of Heller and by Knect's testimony as to his conversation with Mrs. Shimer communicated to Heller, created an estoppel: Taggart's App., 99 Penn. St. 930; Carr v. Wallace, 7 W. 394; Simpson's App., 8 Penn. St. 199; Troxell v. Lehigh Crane Iron Co., 42 Idem 513. Heller had not paid the first mortgage, and the act of June 12, 1878, P. L. 205, by the terms of the " under and subject" clause, created no personal liability. The payment was induced by misrepresentation: Big. Est., 4th ed., 587 and 621, n. 6; Goeing v. Outhouse, 95 Ill. 346; Roberts v. Davis, 72 Ga. 819. The widow clearly waived her rights: Deshler v. Beery, 4 Dall. 300; Reed v. Morrison, 12 S. & R. 19; McKelvey v. Truby, 4 W. &.S. 323; Miller v. Miller, 60 Penn. St. 16; McCormick v. McMurtrie, 4 W. 195; Miller's App., 84 Penn. St. 391; Woodward v. Tudor, 81* Idem 382; Millingar v. Sorg, 55 Idem 215.

3. Although Mrs. Shimer did not sign the agreement, yet in all other respects she was a party to it, as she accepted its benefits from her daughter and from Asher. Observe, that the agreement is a substitute for dower at common law, and by its terms, whenever Mrs. Shimer did claim her dower, it was to be dower at common law. And dower at common law is merely a right to profits, beginning with the assignment or demand: Co. Lit., 32–6; Doct. & Stud., Dial II., ch. 14. But dower in Pennsylvania does not differ in nature and extent from dower at common law: Porter v. Lazear (S. C. U. S.), 14 W. N. 261; Luther v. Wagner, 107 Penn. St. 344. And thus Mrs. Shimer lost her profits by not demanding them in her lifetime.

*Mr. Fred. Green* for Charles Brodhead, the appellee :

The defence relied upon by the appellant is mainly one of estoppel.

1. Since Mrs. Shimer is dead and this action is by her administrator, the defendant is incompetent as a witness to prove the conversation between him and Mrs. Shimer. When Knect and Gernet held their conversation with Mrs. Shimer, the defendant had already bought the farm. And there was no privity between Knect and the defendant. There was, therefore, no estoppel : Big. Est., 508 ; Reel v. Elder, 62 Penn. St. 317 ; Mecough v. Loughery, 12 Phila. 416 ; 2 Bl. Com., 355.

2. As to the point that no demand was made by the widow, the doctrine stated is not in force in this state. In Merrill's Appeal, 16 W. N. 491, the widow actually signed the agreement. In a bill filed fourteen years after her husband's death, a decree was made for arrearages from death of her husband. So in Seaton v. Jamison, 7 W. 533, and in Paul's Exrs. v. Paul, 36 Penn. St. 270.

*Mr. Fred. Green* for Charles Brodhead, appellant :

1. The interest of Mrs. Shimer in the estate of her husband was an estate of freehold, and could only be divested by her own act, a deed or writing, as prescribed by the statute of frauds : Watterson's App., 95 Penn. St. 312. This estate being one third of the real estate, must also be, in value, one third of the value of the estate, and the annual charge upon the land 6 per cent. of that value. It would have been so fixed if the estate had been partitioned in the Orphans' Court : § 41, Act of March 29, 1832, P. L. 202.

2. Interest should have been allowed. It is a compensation for delay in payment : Minard v. Beans, 64 Penn. St. 411. Interest is payable when a widow's interest is secured by a recognizance : Stewart v. Martin, 2 W. 200 ; Knettle v. Crouse, 6 Idem 123 ; Addams v. Heffernan, 9 Idem 529. It may be allowed on mesne profits : Sopp v. Winpenny, 68 Penn. St. 78 ; and arrears of dower are in no way different : Roper, 440.

3. The sum of $250 was paid by Samuel upon the dower in all the real estate he received. The testimony shows that the Heller farm was in value about one half of that property.

Therefore, the credit to which Heller is entitled should not be more than one half of $250.

OPINION, MR. JUSTICE TRUNKEY:

Upon the death of Conrad Shimer, intestate, his widow became entitled to the use of one third of his real estate during life. She was not a party to any instrument which divested that estate. And it may be noted that in the agreement signed by the heirs, dated December 10, 1866, they call her estate dower, and speak of her claim of dower at common law; but the agreement, considered in its entirety, reveals no intent to change her estate, or deprive her of remedies to which she was legally entitled. This cause must be considered with reference to the right of the widow defined by statute.

The contention of Heller is, that the widow accepted the agreement and is bound by its terms. That, we think, is correct, and the first inquiry is, what are the terms relating to herself. At the outset it is stipulated that so long as the widow shall make no claim for dower, each heir shall pay her annually a certain sum, and one of them shall allow her to occupy a house and furnish her specified articles, with permission to enjoy definite privileges. And it is finally stipulated that when the widow shall claim her dower, the payments and privileges shall cease, and "nothing herein contained and no receipt by her of any of the above mentioned payments shall be any bar to her application for such dower, but such payments shall be claimed as a credit on the amount of dower which may be claimed."

Thus is it expressed that she may claim her dower, and whenever she shall claim it, the prior payments shall be a credit. There is no room for implication that by receipt of the payments she waived her right under the law; nor is there any reason in the facts of this case why she should not recover all arrears, subject to a credit as stated in the agreement. It is unnecessary now to consider the question whether, had the annual payments been made, the widow could recover for the years covered by the payments. The contract repels an inference that the widow released the whole or any part of the amount due her, unless in case of actual payment as agreed.

It is not the intendment that the widow must demand her legal right in all the lands of which her husband died seized,

if she elected to do so in the land taken in severalty by one of the heirs. In making the division the value of the widow's interest was not ascertained; she continued to be entitled to her estate in each portion; and it is evident that each heir was to satisfy her, or hold his portion subject to her estate.

Heller claims that, if the widow was entitled to dower in his land, to ascertain the amount due it is necessary to ascertain the value of all the lands of which her husband was seized at the time of his death, and determine the amount by the proportion of the number of acres in his tract to the number of acres in all said lands. But such is not the statutory rule for ascertaining the value of the widow's estate. The inquest shall divide the real estate into as many purparts as there are heirs, if it can be done without prejudice, and if that cannot be done, then to divide the real estate into as many purparts as can be, without prejudice to the value of the whole, and make a just appraisement of each. And the heir who accepts, shall pay the widow the interest on one third the appraised value, or the amount of his bid if he bid higher than the appraisement. Not until the statute of 1867, was the court authorized to decree that the share or purpart of the widow in the whole of the decedent's real estate, where it consists of several tracts, shall be charged on one or more of the tracts, and the others be discharged. That act makes no change in the rule that each purpart shall be separately appraised.

The widow might have compelled partition and valuation of the real estate. Instead, she acquiesced in the agreement of the heirs which recognized her right, as already noted. That she could, under the circumstances, maintain a bill in equity, to recover the sum due on her statutory estate, was decided in Merrill's Appeal, 16 W. N. 491. Her administrator has the same remedy. This claim relates to a separate tract now owned by Heller. The owners of other tracts are in no way jointly liable with him. Nor does it concern him whether any other person shall be compelled to account for the widow's interest in the land. In any form of procedure, either a separate appraisement of this tract would be made, or the rental value thereof ascertained. In Merrill's Appeal the sum demanded was measured by one third the value of the rents,

issues and profits; and this seems a just basis where all the interested parties, by neglect or agreement, omitted to avail of the statutory proceeding for partition and appraisement. If the widow wanted more than one third the rental value of the land, she should have enforced partition. Although her right remained unimpaired by the contract, she had no disposition to assert it until the land was about to be sold by the sheriff. To have proceeded then for partition would not have availed for recovery of anything prior to commencement of the proceeding.

We are not convinced that the master and court below erred in ascertaining the amount of arrears due the complainant. Nor are we persuaded that the ruling relative to interest, under the circumstances, is erroneous. The first and ninth assignments in Heller's appeal, and the first two assignments in the administrator's appeal, are not sustained.

We think the master rightly failed to find the alleged estoppel. The testimony was insufficient to establish it.

Nor was there error in ruling that Samuel C. Shimer was incompetent to testify of matters which occurred between himself and the widow in her lifetime. None of the assignments in Heller's appeal are well taken.

In the appeal by the administrator, the third assignment must be sustained. Samuel C. Shimer paid $150 in 1869, and $100 in 1870; in no year did he pay the widow the sum stipulated in the contract. He took other lands besides the tract described in the bill. Fenicle's testimony shows that the value of the other lands fully equals the value of Heller's tract. Therefore, Heller is entitled to a credit of not more than half of what Shimer paid, and the decree must be corrected by adding $125 to the sum due the complainant.

> In the appeal of Brodhead, administrator, it is now considered and decreed that the decree of the court below be corrected by striking out the words " one thousand seven hundred and forty-nine " and inserting instead thereof the words " one thousand eight hundred and seventy-four." The appellee, Stephen D. Heller, to pay the costs. Record remitted.
>
> In Heller's appeal, decree affirmed, and appeal dismissed at costs of appellant.