## Shupe *v.* Rainey, et al., Appellants.

*Dower—Mineral lands—Separation of coal from surface—Widow's dower in coal—Partnership—Assignment for creditors—Assigning dower—Date of assignment.*

1. Where the owner of coal lands separates the coal from the surface by a conveyance of the coal in which his wife has not joined, the wife's dower rights therein are not affected by a subsequent assignment for the benefit of creditors in which the wife joins.

2. A conveyance of land to a partnership of which the grantor is a member does not affect the dower rights of the grantor's wife therein unless she joins in the conveyance. The firm takes the land subject to the dower of the wife, which cannot be impaired by any subsequent conversion thereof for partnership purposes.

3. A widow is entitled to dower in such mines and quarries as were actually opened and used during the lifetime of her husband.

4. When a widow is entitled to dower, particular lands should,

if possible, be designated by metes and bounds as the dower lands of the widow, but if this is not practicable the dower may be assigned to her in money or by giving to her the right to receive one-third of the rents and profits for life.

5. In a suit in equity brought by a widow for partition of land in which she claimed a dower interest and for an accounting it appeared that a part of the property consisted of a vein of coal which might not be of uniform thickness and which might be interrupted by faults, and be less valuable in some parts than others; the lower court found that the vein was of such a character that the dower interests of the wife could not be set apart by metes and bounds and decreed that plaintiff was entitled to one-third of the rents, issues and profits of such vein and awarded her dower interest from the date when the bill was filed. *Held,* that the method of assigning the widow's dower was correct, but that she was only entitled to it from the date of the decree, and the decree so modified was affirmed.

Argued Sept. 28, 1916.  Appeal, No. 15, Oct. T., 1916, by defendants, from decree of C. P. Westmoreland Co., No. 869, Equity Docket, for partition and for an accounting, in case of Rebecca Shupe, widow of Peter L. Shupe, deceased, v. Roy A. Rainey, Paul J. Rainey and Grace Rainey Rogers, Surviving Trustees under the Will of William J. Rainey, deceased.  Before Brown, C. J., Mestrezat, Potter, Stewart, Moschzisker, Frazer and Walling, JJ.  Modified and affirmed.

Bill in equity for partition and for an accounting. Before Ruppel, P. J.

From the record it appeared that the bill was filed in the Court of Common Pleas of Westmoreland County by Rebecca Shupe, widow of Peter L. Shupe, deceased, against Roy A. Rainey, et al., surviving trustees under the will of William J. Rainey, deceased.  The complainant alleged that she had a dower interest in an undivided one-quarter of the coal under a tract of land in East Huntingdon Township, Westmoreland County, containing 84 acres and 13 perches, and also in an undivided one-quarter of an adjoining tract, containing three acres

and 71 perches, and prayed for partition and an account-
ing.

The findings of RUPPEL, P. J., were substantially as
follows:

Peter L. Shupe and complainant were married Novem-
ber 3, 1864, and lived together as husband and wife until
the death of the former, which occurred December 18,
1911. During the coverture Peter L. Shupe was the
owner of a tract of land containing about 100 acres in
East Huntingdon Township, Westmoreland County,
which was underlaid by a vein of coal. On October 28,
1872, he entered into a partnership with four other per-
sons, Neel, Stoner, Hurst and Schall, for the purpose of
mining and selling coal and manufacturing coke under
the name of the Union Coke Works. He agreed to con-
tribute to the partnership the coal under 84 acres and 13
perches of his land and also the surface tract above men-
tioned.

On June 11, 1873, Shupe conveyed to his four partners
an undivided three-fourths interest in the coal underly-
ing the 84-acre tract and a similar interest or fee in the
surface of the three-acre tract, his wife, the present com-
plainant, joining in the deed. On January 1, 1880, he
conveyed to William J. Rainey his undivided one-fourth
interest in the coal under the 84-acre tract, and on April
19, 1889, he conveyed to Gilbert T. Rafferty his undivided
one-fourth interest in the three-acre tract, with 42 coke
ovens and other improvements thereon. His wife did not
join in either of these deeds. The title of all other par-
ties in interest in both properties afterwards became
vested in William J. Rainey.

On January 22, 1886, Shupe made a deed of general as-
signment for the benefit of his creditors in which his wife
joined. This deed purported to convey his tract of 100
acres in East Huntingdon Township, and contained no
reservations or exceptions, and made no mention of pre-
vious sales of land or of coal. The description did not
include the tract of three acres 71 perches, but did in-

clude the tract of 84 acres 13 perches which was underlaid by the coal previously conveyed. The land described in the deed was afterwards sold and conveyed by the assignees.

As already stated, Shupe died December 18, 1911, and William J. Rainey has also died, and the title to the properties in question has become vested in defendants as trustees under his will, subject, complainant alleges, as to an undivided one-fourth part of each, to her claim for dower. Rainey's title was acquired in part under proceedings in partition which were before this court in Hurst v. Brenner (No. 1), 239 Pa. 216. That case, however, has no bearing on the questions raised on the present appeal.

The bill in this case was filed July 20, 1914, and there is no evidence of any previous demand for assignment of dower having been made by complainant.

The trial judge decided that complainant was entitled to the relief prayed for, and entered a decree ordering that one-third of the tract of three acres and 71 perches should be admeasured and set off by metes and bounds to secure her dower therein, and that, as to the coal underlying the other tract, there should be assigned and set apart for her use a money value equal to one-third of the rents, issues and profits thereof, from July 20, 1914, the date when the bill was filed, and for the future, one-third of the rents, issues and profits should be set apart for her during her lifetime.

The court dismissed exceptions to various findings of fact and law.

*Errors assigned* were in dismissing the exceptions and the decree of the court.

*Paul H. Gaither,* with him *C. Andrade* and *Charles E. Whitten,* for appellants.—The lower court erred in awarding an annual money charge to the plaintiff, there being no proof that their portion could not be laid off

by metes and bounds: Thompson v. Morrow, 5 S. & R. 289; Benner v. Evans, 3 P. & W. 454; Shirtz v. Shirtz, 5 Watts 255; Lineweaver v. Stoever, 17 S. & R. 297; Barnet v. Barnet, 15 S. & R. 72; Sharp v. Pettit, 3 Yeates 38; Gannon v. Widman, 15 Pa. C. C. 474.

Plaintiff's joinder in a deed of assignment for the benefit of creditors divested the plaintiff of her dower rights in a parcel of land which had previously been conveyed: Gray v. McCune, 23 Pa. 447; McKee v. Brown, 43 Ill. 130; Frey v. Boylan et ux., 23 N. J. Eq. 90; Hoogland 'v. Watt, et al., 2 Sand. Ch. (N. Y.) 148; Boorum v. Tucker, et ux., 51 N. J. Eq. 135.

The creation of the partnership worked an equitable conversion of the real estate contributed thereto and barred the plaintiff's dower therein: Patterson v. Silliman, 28 Pa. 304; Williams' App., 122 Pa. 472; Moderwell v. Mullison, 21 Pa. 257; West Hickory Mining Assn., v. Reed, 80 Pa. 38.

*Jno. E. Kunkle*, with him *J. Harry Pershing* and *Christ. C. Walthour*, for appellee.— The deed of assignment did not affect the widow's dower: Lazear v. Porter, 87 Pa. 513; Winters v. DeTurk, 133 Pa. 359; In re Chotiner, 62 Pitts. L. J. 593; Mills v. Ritter, 197 Pa. 353; Gray, et ux., v. McCune, 23 Pa. 447.

- The conveyance of the real estate to the partnership did not bar the widow's dower therein: 10 Am. & Eng. Enc. of Law, 159, citing Foster's App., 74 Pa. 391; Cundey v. Hall, 208 Pa. 335; Painter v. Painter, 220 Pa. 82; Fidelity Title & Trust Co., Admr., v. Bell et al., 188 Pa. 637; Account of Welles (Haeberly's App.), 191 Pa. 239.

OPINION BY MR. JUSTICE POTTER, January 8, 1917:

In the first, second, and third assignments, it is alleged that the court below erred in overruling certain exceptions to findings of fact. These assignments cannot be

sustained, as our examination of the record shows that the findings were fully justified by the evidence.

The fourth assignment is to the dismissal of appellants' exception to the conclusion of law that the court could enter only an interlocutory decree establishing the right of the plaintiff to dower in the premises, leaving the amount or value of the dower to be thereafter ascertained. This assignment is without merit, and counsel for appellants made no effort to support it by argument.

The fifth, sixth, seventh, twelfth, fourteenth and sixteenth assignments of error all relate to the effect of the joinder of the plaintiff in an assignment made by her husband, Peter L. Shupe, for the benefit of his creditors. The court held that the joinder of the wife in the assignment did not affect her right to dower in real estate which the husband had previously aliened by conveyances in which she did not join. With this conclusion we agree. There had been a severance of the coal from the surface of the tract of land in question, and the husband, by his deed dated January 1, 1880, had conveyed his interest in the coal to William J. Rainey. The deed of assignment for the benefit of creditors was not made until January 22, 1886, at which time the husband had no interest in the coal. The wife joined in the deed of assignment merely for the purpose of releasing her inchoate right of dower in the land which was thereby conveyed. Had she not joined in the deed, her right of dower would not have passed to a purchaser from the assignees: Mills v. Ritter, 197 Pa. 353; McFadden v. McFadden, 32 Pa. Superior Ct. 534. The deed shows no intention, upon the part of the wife, of releasing her dower interest in the coal which had some years before been deeded to another party, and in which the assignees acquired no interest whatever. We think the court below was right in holding that the deed of assignment in no way affected the dower right of the wife in the coal.

In the eighth and eleventh assignments of error the question is raised, of the effect, if any, of Shupe's action

in contributing his interest in the mine and the three-acre tract of land to the partnership, known as the Union Coke Co. Appellants claim that the real estate so contributed became partnership assets and was converted into personalty, and that, therefore, Shupe's widow can have no dower in it. The court below held that, while the real estate may have been converted as between the partners and those dealing with the firm, it "did not become personal property as to the plaintiff, Rebecca Shupe." And further that there was, in any event, a reconversion into realty "as is evidenced by the partition proceedings in Hurst v. Brennen (No. 1), 239 Pa. 216." It is apparent that, as Mrs. Shupe was not a party to the transfer of her husband's real estate to the partnership, her rights could not be affected by anything which he might do in that respect. Except as she voluntarily released her right, the parties taking the property would take it subject to her inchoate right of dower.

As early as Kirk v. Dean, 2 Binn. 341, it was held that even where a wife joined with her husband in a conveyance of his land, but failed to acknowledge the deed in accordance with the act of assembly, her right of dower was not impaired. To the same effect is Thompson v. Morrow, 5 S. & R. 289. In Winters v. DeTurk, 133 Pa. 359, Mr. Chief Justice Paxson stated the law as follows (p. 364) : "At common law a wife was entitled to dower out of any lands of which her husband was seised at any time during coverture. Under our law, the wife may convey her right to dower by joining with her husband in the deed. But if the husband convey his land without his wife so joining and executing the deed as prescribed by the act of assembly, her dower rights do not pass, and she can claim them after the death of her husband."

The subject of conversion of partnership real estate, and its reconversion, is considered in the leading case of Foster's App., 74 Pa. 391, cited by the court below and by both parties in this appeal.

In a later case, Account of Welles, 191 Pa. 239, Mr.

Justice MITCHELL said (p. 248) : "Land held by partners as partnership assets is to be treated as if it were personalty to the extent demanded by the purpose with which it is put into the common stock, but no further. How far that shall go is largely a matter of intention, but the presumption is that it shall extend to all the regular and legitimate uses of the business, and it may be that as to creditors this presumption must be held conclusive. ......The realty involved in the present case was put into the partnership assets for use by the firm in the business, and so long as the business continued it was liable to be treated for all necessary business purposes as part of the general stock. But its status as personalty even during the continuance of the business was temporary and restricted, and the moment the necessity for so treating it ceased, its quasi character ceased and it resumed its normal position as land. To extend the operation of the conversion so as to alter the devolution of title would be to pervert an equitable fiction from the very purpose of its invention."

The question of conversion and reconversion is perhaps not important in the present case, as the property in question did not come to the partnership from an outsider, but was contributed by one of the partners, it being at the time subject to the wife's right of dower. The firm took it, subject to that right, which could not be impaired by any subsequent conversion for partnership purposes. Nor is there any merit in the suggestion that the wife's right of dower was barred by previous proceedings and sale in partition. It does not appear that either complainant or her husband was a party to that proceeding. Her interest could not have been affected by sales made as the result of litigation among other parties.

At common law, mines were subject to dower, if opened in the lifetime of the husband. In Stoughton v. Leigh, 1 Taunt. 402, the leading English case on the subject, the syllabus reads: "Dower is due of mines wrought during the coverture, whether by the husband or by lessees for

years,......and whether the mines are under the husband's own land or have been absolutely granted him to take the whole stratum in the land of others......But dower is not due of mines or strata unopened, whether under the husband's soil or under the soil of others."

In 2 Snyder on Mines (1902), Sec. 932, Stoughton v. Leigh, supra, is said to be the best considered English case and "to be generally recognized." The author then says (Sec. 933) : "The rule seems to be well settled by all the courts in this country that have had occasion to consider the question, that in all cases where the mines have been opened in the lifetime of the husband and the right of dower exists, the widow becomes seised of her dower interest therein."

In 10 Am. & Eng. Ency. (2d Ed.), 158, it is said: "It is well settled that a widow is entitled to dower in such mines and quarries as were actually opened and used during the lifetime of her husband."

In the present case the court below has found that during coverture, complainant's husband, together with his partners, began to operate the coal mine, the opening being on the 84-acre tract, and that operation of the mine has continued down to the present time. Without doubt, therefore, the complainant is entitled to dower in the mine.

In several of the assignments of error the question is raised whether, conceding that complainant has established her right to dower, the court below adopted the proper method of assigning it. There is no question as to the tract of land of three acres and seventeen perches. As to the mine, the decree is as follows: "And as to the nine-foot seam of coal on the tract containing 84 acres, 13 perches,......there is to be assigned and set apart for the use of the widow, Rebecca Shupe, a money value equal to one-third of the rents, issues and profits in said tract, from the 20th day of July, 1914, to the present time; and, for the future, one-third of the rents, issues and profits thereof from this date for and during the

lifetime of the said Rebecca Shupe." Counsel for appellants contend that this portion of the decree is erroneous: (1) Because the dower in the coal should be admeasured and set apart by metes and bounds if practicable, and it does not appear that this method is impracticable; and (2), because, if rents, issues and profits are allowed at all, they should be calculated from the date of the decree, and not from July 20, 1914, which was the date when the bill was filed and demand first made.

In Stoughton v. Leigh, 1 Taunt. 402, cited above, Lord Mansfield said (p. 409): "Though all lands and tenements are subject to dower, and assignment is to be made by metes and bounds where it can, yet it is no impediment to dower that the tenements are of such a nature as that they cannot be assigned by metes and bounds; but in those cases it shall be assigned as well as it can be as by the third toll dish of a mill, or the like."

In Bainbridge on Mines (4th Eng. Ed. 1878), 381, it is said: "When there is but one mine,......it is obvious that the ordinary mode of assignment by metes and bounds is impracticable, and some other means must be resorted to for determining the estate of the dowress. ......But the sheriff may......divide the enjoyment and perception of the profits of the mine between the parties, viz: by directing the separate alternate enjoyment of the whole for short periods, proportioned to the share each party had in the subject, or by giving to the widow an adequate share of the profits."

In 14 Cyc. L. & Pr. 1005, it is said: "The rule in respect to the assignment of dower in open mines as laid down at an early date in England and as adopted to a certain extent in this country is that the sheriff or commissioners, in setting off the dower, shall estimate the annual value of such mines as part of the estate of which the widow is dowable and award the widow her portion of such mines by metes and bounds, if practicable, and, if not, to allot her a proportion of the profits, or a separate

alternate enjoyment of the whole for short proportionate periods."

In 9 Ruling Case Law, 609, it is said: "If possible, particular land should be designated as the dower land of the widow by metes and bounds; but, if this is not practicable, and the statute does not forbid, the dower may be assigned to her in money, or by giving to her the right to receive one-third of the rents and profits for life."

In Howells v. McGraw, 97 App. Div. (N. Y.) 460, PAT-TERSON, J., said (p. 465) : "At common law the rule is well established that when property out of which dower is to be assigned is indivisible and, therefore, will not admit of setting apart a portion by metes and bounds, an allotment may be made to the widow of her proportionate share of rents and profits issuing from the entire property." Citing the following New York cases:

Coates v. Cheever, 1 Cowen (N. Y.) 460, where the questions relating to dower in mines were elaborately considered and Stoughton v. Leigh, supra, cited (p. 479) as authority. SAVAGE, C. J., said (p. 477) : "The ad-measurers......ought to have assigned to the widow one-third of the whole estimated value of the property, deducting the value of the improvements made since the sale by her husband. If practicable, they should have given her a proportion of the ore bed, assigning to the tenant his own improvements. If such a division was impracticable, then they should have directed an alternate occupancy of the whole, or a share of the profits, always securing to the tenant his own improvements, or a suitable allowance for the use of them."

Van Gelder v. Post, 2 Edw. Ch. 577, which, while it does not relate to mining property, resembles the present case in the two particulars (p. 579) that the dower consisted "in the use of an undivided fourth part of the premises of which her husband was seised in common with others," and that there had previously been a sale under partition proceedings among the tenants in common.

The vice-chancellor said (p. 579): "It was judicially ascertained at that time that the property could not be divided into parts requisite for the partition, without great prejudice to the owners; and therefore a sale was ordered. It is manifest now that to assign or admeasure to the complainant an equal twelfth part by metes and bounds would be giving to her what would be useless for occupancy or renting. The bill prays an assignment of her dower specifically, or an equivalent in money. Where, from the nature of the property, dower cannot be assigned by metes and bounds of the land, it may be held to attach to the rents and profits or other produce, as in the working of mines, and any equitable mode of compensating the widow can be adopted. But the amount of her compensation must be regulated by the value of the lands at the time of the alienation by the husband. This is now the fixed and settled rule where the husband aliened in his lifetime."

White v. Story, 2 Hill 543, where BRONSON, J., said (p. 548): "And in mines which have been opened in the lifetime of the husband, if dower cannot be assigned by metes and bounds, the parties may have an alternate occupancy of the whole, or the widow may take a third of the rents and profits. These are cases where the thing is of such a quality that no division can be made which will give the parties the enjoyment of their respective shares in severalty."

Only two of our own cases bearing upon this question have been cited or found. They are Kelso's App., 102 Pa. 7, and Borland v. Murphy (Supreme Ct.), 4 W. N. C. 472. In these cases the power of the court to award a share of the rents and profits or the payment of an annual sum in lieu of dower is recognized, but they do not relate to a mine, nor define the conditions under which such award may be made.

In the present case, we think the finding of the trial judge that it was impracticable to assign complainant's dower in the mine by metes and bounds, was obviously

correct. There is but one mine, which is operated in a single vein of coal, underlying some 84 acres of land. The vein may not be of uniform thickness, and it may at places be interrupted by faults. Any definite portion of the vein might prove to be more or less valuable than the average. In the partition suit of Hurst v. Brennen (No. 1), 239 Pa. 216, it was judicially determined that this same property could not be divided without prejudice to, or spoiling the whole. Even if to the widow should be allotted her one-third of one-fourth of the mine, it would not be practicable for her to work that portion by itself. Manifestly, under the circumstances, the fair and reasonable method will be for the owners, as they work the mine, to account to complainant for her share of the value of the coal which is taken out. She is not entitled to share in the profits of the coke business, nor does the decree require an accounting for them. Her interest is in the rents, issues and profits of a coal mine, which is a going concern. As the trial judge says, the value of that interest must be determined by future proceedings, unless the parties can agree upon the amounts. We think, however, that the court below erred in directing that, in accounting to the widow for her share of the rents, issues and profits of the mine, the computation was to be made from July 20, 1914, the date when the bill was filed. The rule in Pennsylvania is that, in assigning dower in lands which have been aliened by the husband and during the coverture, the value shall be ascertained as of the time when the assignment is made: Sharp v. Pettit, 3 Yeates 38; Thompson v. Morrow, 5 S. & R. 289; Benner v. Evans, 3 P. & W. 454; Shirtz v. Shirtz, 5 Watts 255. Where the assignment is by metes and bounds, the widow's use of the land cannot, of course, begin before it is actually set apart for her. If, instead of this method, a proportionate share of the rents, issues and profits of the land is given to her, it naturally follows that she should receive it only from a date upon which she could have taken possession of the land, had it been assigned to

her. It is the date of the assignment that governs, which in this case was September 6, 1915, when the decree of the court below was confirmed absolutely. The eighteenth specification of error is, therefore, sustained.

The remaining specifications of error are all overruled, and the decree of the court below is affirmed, save as to the date from which the value of the dower interest is to be computed. As above stated, the proper date is September 6, 1915. This appeal is dismissed at the cost of appellants.